UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 12-415 CAS | | Date | July 22, 2013 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| Catherine Jeang | Laura Elias | Grant Gelberg<br>Aaron May |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| AUGUSTUS OHEMENG, M.D. | X | | X | EDWARD ROBINSON | X | | X |
| | | | | TECIA BARTON | X | | X |

Proceedings:   DEFENDANT AUGUSTUS OHEMENG'S MOTION FOR A NEW TRIAL (Docket #141, filed May 24, 2013)

## I.   INTRODUCTION

On May 1, 2012, a grand jury returned an indictment charging defendants Augustus Ohemeng ("Ohemeng"), George Tarryk ("Tarryk"), Emmanuel Chidueme ("Chidueme"), and George Samuel Laing ("Laing") each with six counts of health care fraud pursuant to 18 U.S.C. §§ 1347, 2. Defendants Tarryk, Chidueme, and Laing have entered plea agreements or pled guilty, dkt. #92, 78, 72, and a jury trial was held as to Ohemeng from February 26, 2013 to March 5, 2013. On March 6, 2013, the jury found Ohemeng guilty on all six counts. Dkt. #119.

On May 24, 2013, Ohemeng filed a motion for a new trial. The government filed an opposition on July 1, 2013, and no reply has been filed. After considering the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

The indictment against Ohemeng alleges the following facts. Ohemeng is a physician who treated patients at a medical clinical located at 2491 Pacific Avenue, Suite #2 ("Pacific Clinic") in Long Beach, California. Indictment ¶¶ 1, 2. Laing was the manager and operator of the Pacific Clinic, and Tarryk was another physician who treated patients at the Pacific Clinic. Indictment ¶¶ 1, 3. Chidueme was the owner of Ivy Medical Supply, Inc. ("Ivy"), a company that sold durable medical equipment ("DME"). Indictment ¶ 4. The indictment also mentions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CRIMINAL MINUTES - GENERAL

Santos Medical Supply ("Santos"), another Los Angeles DME supply company that did business with the Pacific Clinic.

The indictment alleges that defendants engaged in the following scheme designed to misappropriate Medicare funds. Laing, the manager of the Pacific Clinic, used patient recruiters to draw medicare beneficiaries to the clinic as patients. Indictment ¶ 20c. Then, Ohmeng and Tarryk prescribed enteral nutrition (a liquid nutritional supplement) to these patients, along with kits used to administer enteral nutrition. Indictment ¶¶ 7 – 8. The indictment alleges that these prescriptions were fraudulent because Ohemeng and Tarryk knew these patients could ingest food orally, and Medicare does not cover enteral nutrition for such patients. Indictment ¶¶ 19, 20d – g.

Once Ohemeng and Tarryk wrote the prescriptions, Laing referred the prescriptions to DME supply companies, including Santos and Ivy, and the companies would pay Laing kickback payments for the referrals. Indictment ¶ 20g. Employees of Santos and Ivy would then submit claims to Medicare asserting that Santos and Ivy had supplied medically necessary enteral nutrition and feeding supply kits, claims that were allegedly false because the prescriptions were not medically necessary. Indictment ¶ 20h – i. Based on these prescriptions, Santos and Ivy billed medicare for approximately $2.4 million and $3.3 million respectively, and Medicare then paid Santos $1.4 million and $1.5 million, respectively. Indictment ¶ 9.

While the indictment described the general features of the alleged scheme to defraud medicare, the six counts of health care fraud charged in the indictment arise out of six specific false claims that were presented to medicare. Indictment ¶ 23. These claims all sought payment for enteral nutrition and syringes provided to medicare beneficiaries. Id.

At trial, the government submitted evidence showing that Ohemeng conducted unnecessary medical examinations at the Pacific Clinic for patients who received prescriptions for enteral and enteral administration supplies. The government's evidence also tended to show that Ohemeng billed medicare for these tests, and distributed the funds received to other participants in the scheme to defraud. Since this evidence did not directly concern false claims for providing enteral nutrition and related DME, the government did not introduce the evidence to directly prove the conduct charged in the indictment. Instead, the government's purpose in introducing this evidence was to demonstrate that Ohemeng knowingly and willfully participated in the scheme to defraud alleged in the indictment.

The jury was given an instruction explaining the limited purpose for which the evidence regarding unnecessary tests could be considered. This instruction provided:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

> The government has introduced evidence that the defendant ordered or approved unnecessary medical tests for patients that also received a prescription for Enteral Nutrition and syringes, that these tests were billed to Medicare, and that Medicare paid defendant. You may consider this evidence to determine if the defendant knowingly and willfully participated in the conduct charged in the indictment. You may also consider this evidence for its bearing, if any, on the question of defendant's knowledge, intent, motive, or absence of mistake. This evidence may not be used for any other purpose. Defendant is charged with six counts, each of which represents a separate execution of the alleged scheme to defraud Medicare. Those executions are claims submitted to Medicare for Enteral Nutrition and syringes, and not medical tests ordered or approved by defendant.

Jury Instruction No. 28, Dkt. #113.

### III. LEGAL STANDARD

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Proc. 33; United States v. Alston, 974 F.2d 1206, 1211 – 1212 ("A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal. . . . If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict . . . .").

As relevant here, a court may grant a new trial if there is a divergence between the conduct charged in the indictment and the evidence introduced at trial, and this divergence amounts to either a "constructive amendment to the indictment" or an unconstitutional "variance." United States v. Adamson, 291 F.3d 606, 614 – 615 (9th Cir. 2002). Generally, "[a]n amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has passed upon them," whereas a variance "occurs when the evidence offered at trial proves facts materially different from those alleged in the indictment." Id. at 614 (quoting United States v. Van Stoll, 726 F.2d 584, 586 (9th Cir. 1984)). Constructive amendments can occur in two circumstances, "where (1) there is a complex of facts presented at trial distinctly different from those set forth in the charging instrument, or (2) the crime charged in the indictment was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved." Adamson, 291 F.3d at 615; United States v. Bhagat, 436 F.3d 1140, 1145 (9th Cir. 2006). In contrast, courts "have generally found a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

variance where the indictment and the proof involve only a single, though materially different, set of facts." Id.  As the Ninth Circuit has acknowledged, "[t]he line between a constructive amendment and a variance is at times difficult to draw." Id.

## IV.   ANALYSIS

Ohemeng argues that a new trial should be ordered because either a variance or constructive amendment to the indictment occurred during trial.  The purported divergence between the conduct charged in the indictment and the evidence introduced at trial concerns the government's evidence regarding unnecessary medical tests.  According to Ohemeng, in its closing arguments, the government abandoned the theory charged in the indictment that Ohemeng was involved in a scheme to defraud Medicare by submitting false claims involving prescriptions for enteral and related DME.  The government purportedly abandoned this theory by telling the jury that they could ignore the testimony given by Laing, which, according to Ohemeng, was the only evidence connecting him to the scheme alleged in the indictment.  Ohemeng further argues that the government, by relying on evidence concerning unnecessary tests, implicitly argued to the jury that they should convict Ohemeng due solely to that fraudulent conduct.  Ohemeng therefore concludes that he was indicted for false claims arising out of enteral prescriptions and related DME, but convicted for billing unnecessary tests to medicare, and that a new trial is necessary to correct this error.

The Court rejects Ohemeng's arguments.  First, there was no constructive amendment to the indictment.  "[E]vidence not referenced in the indictment may be admitted for impeachment or other legitimate purposes without effecting any changes to the indictment." Bhagat, 436 F.3d at 1146.  Here, as in Bhagat, the references to unnecessary medical tests were not intended to amend the indictment, but instead were meant to demonstrate defendant's knowing and willful participation in the scheme alleged in the indictment.  This is a wholly legitimate use of the evidence, and the limited purpose of this evidence was made explicit in the jury instructions.  Fed. R. Evid. 404(b); Jury Instruction No. 28, Dkt. #113.  Consequently, there is no basis for concluding that a constructive amendment to the indictment occurred.

Similarly, the clear instructions to the jury show that there was no unconstitutional variance in this case between the indictment and the evidence.  As the Ninth Circuit observed in Bhagat, where the jury is not "steered toward a finding at variance with the indictment," it is not proper to find a variance based on the fact that evidence not referenced in the indictment is introduced at trial.  Bhagat, 436 F.3d at 1147 (noting that in cases where a variance was found, "we focused on the extent to which the jury was steered toward a finding at variance with the indictment. * * * Nothing of the sort occurred in this case, and the verdict reflected no material variance from the charges in the indictment.").  Due to the jury instruction clarifying the proper

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

and improper uses of the medical tests evidence, the Court finds that the jury was not steered towards a finding of guilt based on unnecessary medical tests rather than the fraudulent prescriptions for enteral nutrition and DME alleged in the indictment.

Finally, the Court finds that the prosecutor's closing arguments were not improper. By informing the jury that they could ignore Laing's testimony, the government did not abandon the theory alleged in the indictment, because the government presented a substantial amount of other evidence to prove the conduct charged. The government's evidence included, *inter alia*, Ohemeng's signature on hundreds of prescriptions for enteral and DME for patients who were not tube fed, hundreds of certificates of medical necessity signed by Ohemeng that falsely certified that certain patients were tube fed, and testimony from a Santos employee stating that Santos paid kickbacks to the Pacific Clinic. Moreover, the government's closing argument did not improperly rely on the evidence concerning unnecessary tests. "[C]ounsel are necessarily permitted a degree of latitude in presentation of their closing summations . . . . Courts must allow the prosecution the freedom to strike 'hard blows' based on the evidence and all fair inferences therefrom. . . ." United States v. Prantil, 764 F.2d 548, 555 (9th Cir. 1985). By relying on this evidence in its closing argument, the government merely struck a "hard blow," and in light of the jury instruction clarifying the permissible and impermissible uses of this evidence, the Court cannot find that the closing argument was improper.

## V. CONCLUSION

In accordance with the foregoing, Ohemeng's motion for a new trial is hereby DENIED.

IT IS SO ORDERED.

| | 00 | : | 02 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |